S. LANE TUCKER
United States Attorney

JACK S. SCHMIDT
Assistant United States Attorney
Federal Building & U.S. Courthouse
709 West 9th Street, Room 937
Post Office Box 21627
Juneau, Alaska 99802
Phone: (907) 796-0400
Fax: (907) 796-0409
Email: jack.schmidt@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CRISTOBAL "CRIS" MAGNO RODRIGO, GLENDA TIGLAO RODRIGO, and **CHRISTIAN RYAN TIGLAO RODRIGO** d.b.a ALASKA STONE ARTS, LLC., RAIL CREEK, LLC., and RODRIGO CREATIVE CRAFTS,<br><br>Defendants. | No. 1:23-cr-00003-TMB-MMS-003 |

**PLEA AGREEMENT**

**Unless the parties jointly inform the Court in writing of any additional agreements, this document in its entirety contains the terms of the plea agreement between the defendant and the United States. This agreement is limited to the District of Alaska; it does not bind other federal, state, or local prosecuting authorities.**

## I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

### A. Summary of Agreement

The defendant agrees to plead guilty to the following count(s) of the Information in this case: 1 - Conspiracy, in violation of 18 U.S.C. § 371; and 2 - Misrepresentation of Indian Produced Goods and Products, in violation of 18 U.S.C. § 1159(a) and (b)(1)(A)(i). The parties stipulate and agree to the amount of loss of $1,008,935.28 to be used for the purpose of determining the underlying guideline calculation pursuant to U.S.S.G. § 2B1.1 (b)(1)(H) calling for a +14 level increase from the base level of 6, for a total offense level of 20. The parties stipulate and agree that the government will not seek a period of active incarceration, however, will recommend as condition of probation a 3 months cap on home detention and 200 hours of community work service. The parties stipulate and agree that the defendant will not pay a fine. The parties further stipulate and agree to joint and several restitutions to be paid to customers identified in the total amount of $54,204.81. The parties further stipulate to a period of probation of five years. The parties further stipulate and agree that the defendant to write and sign a letter of apology, approved by the United States Attorney's Office, to be published in the Ketchikan newspaper for two weeks at the defendant's expense. The United States agrees not to prosecute the defendant further for any other offense related to the event(s) that resulted in the charge(s) contained in the Information.

The defendant will waive all rights to appeal the conviction(s) and sentence imposed under this agreement. The defendant will also waive all rights to collaterally

attack the conviction(s) and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea(s).

**B. Federal Rule of Criminal Procedure 11**

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(C) will control this plea agreement. Thus, the defendant may withdraw from this agreement or the guilty plea(s) if the Court rejects the parties' sentencing recommendations at the sentencing hearing.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

**A. Charges**

**1. The defendant agrees to plead guilty to the following count(s) of the Information:**

Count 1: Conspiracy, a violation of 18 U.S.C. § 371

Count 2: Misrepresentation of Indian Produced Goods and Products, a violation of 18 U.S.C. § 1159(a) and (b)(1)(A)(i)

**B. Elements**

The elements of the charge(s) in Count 1 to which the defendant is pleading guilty are as follows:

1. Beginning on or about March 2016 and continuing through on or about December 8, 2021, there was an agreement between two or more persons to commit Misrepresentation of Indian Produced

Goods and Products, a violation of 18 U.S.C. § 1159(a) and (b)(1)(A)(i);

2. The defendant joined in the agreement knowing of its purpose and intending to help accomplish that purpose; and

3. One of the members of the conspiracy performed at least one overt act on or after March 2016 for the purpose of carrying out the conspiracy.

The elements of the charge(s) in Count 2 to which the defendant is pleading guilty are as follows:

1. The defendant offered or displayed for sale or sold any good;

2. In a manner that falsely suggested the good was Indian produced, an Indian product of a particular Indian, Indian Tribe, or Indian arts and crafts acts organization;

3. The defendant committed those acts knowingly; and

4. The goods offered, displayed, or sold, were offered, displayed, or sold for a price of $1,000 or more.

### C. Factual Basis

The defendant admits the truth of the allegations in Counts 1 and 2 of the Information and the truth of the following statement, and the parties stipulate that the Court may rely upon this statement to support the factual basis for the guilty plea(s) and for the imposition of the sentence:

Beginning in or about March 2016, and continuing through on or about December 8, 2021, in the District of Alaska, in or near Ketchikan, and elsewhere, defendants CRISTOBAL MAGNO RODRIGO, GLENDA TIGLAO RODRIGO, and CHRISTIAN RYAN TIGLAO RODRIGO, and other known and unknown, conspired with each other and others to knowingly display, offer for sale, and sell for $1,000 or more, stone carvings and wood totem poles, manufactured in the Philippines, in a manner that suggested the stone carvings and wood totem poles were authentic artwork produced by Alaska Natives, when in fact they were not a Alaska Native produced, product, or a product of an Alaska Native Indian or Tribe.

During all times relevant to the charges in this case, the defendant CHRISTIAN RYAN TIGLAO RODRIGO lived in Washington and starting in May 2017, assisted in the day-to-day operations of ALASKA STONE ARTS owned by his parents CRISTOBAL MANGO RODRIGO and GLENDA TIGLAO RODRIGO and RAIL CREEK owned by CRISTOBAL MAGNO RODRIGO in Ketchikan, Alaska, which sold a wide range of stone carvings and wood totem poles, respectively. CHRISTIAN RYAN TIGLAO RODRIGO also was employed as a salesperson at ALASKA STONE ARTS and RAIL CREEK in May 2017. In 2003, GLENDA TIGLAO RODRIGO owned and operated RODRIGO CREATIVE CRAFTS in the Philippines that was responsible for the production of stone carvings in Alaska Native designs and styles that were taught by CRISTOBAL MAGNO RODRIGO and sometime in 2016 RODRIGO CREATIVE CRAFTS contracted with local wood carvers in the Philippines to produce wood totem poles in Alaska Native designs and styles as directed by the defendants. The products

sold in the defendant's stores were not made by Alaska Native artists, but were produced in the Philippines with Filipino labor, and the items sold in their stores were crafted based upon traditional Alaska Native designs or styles, but were not made by Alaska Natives or members of any American Indian tribe. The business in Alaska utilized non-Alaska Native and Alaska Native employees which falsely represented the employees were part of an Alaska Native family business and representing those employees as Alaska Natives who produced the Philippine stone carvings and wood totem poles sold in both businesses knowing that the products were made in the Philippines with Filipino labor.

The following overt acts were knowingly committed in furtherance of the conspiracy by CHRISTIAN RYAN TIGLAO RODRIGO "C.R. RODRIGO" and others on behalf of the defendant during the course of the conspiracy:

On or about May 28, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, sold a Philippine produced bear with a fish in its mouth stone carving for $1,435.00, representing that S.P.C. produced the carving and the carving was signed "SC", which identifies S.P.C. as the artisan.

On or about July 14, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, sold Philippine produced two dolphins stone carving for $1,600.00, identifying the carvers as Alaska Native, which were signed "Kilit" associating C.M. RODRIGO as the artist, and the other was signed "jr".

On or about July 22, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, sold a Philippine produced eagle stone carving for $6,435.00 which was signed "Simeon", which identifies S.P.C. as the carver and gifted four other Philippine produced

stone carvings as part of the purchase and representing all of the carvings were made by Alaska Natives. The carvings were signed by multiple artists, "Kilit" associated with C.M. RODRIGO, "ЯR" associated with C.R. RODRIGO.

On or about July 25, 2019, at RAIL CREEK, T.L.M., an Alaska Native, sold a Philippine produced 5-foot wood totem pole for $2,435.00 after representing that it was made by him as an authentic Alaska Native produced wood totem pole. T.L.M. took a picture with the wood totem pole and signed his name on the back of the pole indicating that T.L.M. was the carver.

On or about August 8, 2019, at ALASKA STONE ARTS, S.P.C., an Alaska Native, and C.R. RODRIGO offered to sell to an undercover law enforcement agent a whale tail stone carving signed by "ЯR" and one two bears stone carving signed by "Kilit" for $7,000. Both S.P.C. and C.R. RODRIGO both misrepresented the carvings as produced by Alaska Natives.

On or about August 8, 2019, at ALASKA STONE ARTS, J.H.R. offered to sell to an undercover law enforcement agent a Philippine produced bear stone carving by "Kilit" for $2,500. J.H.R. misrepresented the carving as produced by an Alaska Native.

On or about August 19, 2019, at ALASKA STONE ARTS, C.R. RODRIGO and T.L.M., an Alaska Native, sold two Philippine produced stone carvings, a whale tail stone carving by "ЯR" and a whale stone carving by "jr" for $2,500.00. C.R. RODGRIO identified himself as an Alaska Native artist that carved the whale tail "ЯR", and T.L.M. represented that both carvers were Alaska Native artists.

On or about August 28, 2019, at ALASKA STONE ARTS, C.R. RODRIGO sold a Philippine produced salmon stone carving by "Kilit" for $1,935.00 identifying himself as the son of the master carver "Kilit" and as a Native American.

On or about September 10, 2019, at ALASKA STONE ARTS, J.H.R. sold to an undercover law enforcement agent a Philippine produced humpback whale stone carving by "Kilit" and a sea turtle by "Sonny" identifying J.H.R. as the artist for $2,200.00. J.H.R. stated he was the carver of the sea turtle and represented himself and "Kilit" as Alaska Native Tlingits.

On or about September 28, 2019, at ALAKSA STONE ARTS, J.H.R. sold to an undercover law enforcement agent, a Philippine produced four bears stone carving signed by "Kilit" for $1,500.00 and J.H.R. identified himself as an Alaska Native Tlingit and represented "Kilit" as his uncle who is an Alaska Native Tlingit master carver.

On or about September 28, 2019, at ALASKA STONE ARTS, T.L.M., an Alaska Native, offered to sell undercover law enforcement agents, a Philippine produced eagle stone carving signed by "Kilit" for $2,500.00. T.L.M. misrepresented "Kilit" as an Alaska Native Tlingit artist.

On or about March 14, 2021, C.R. RODRIGO, in Kent, Washington, representing ALASKA STONE ARTS, sold a Philippine produced whale tail stone carving signed "Ryan" for $1,600.00 and gifted a bear carving signed "ЯR". C.R. RODRIGO identified himself as the carver and as an Alaska Native Tlingit.

On or about March 14, 2021, C.R. RODRIGO, in Kent, Washington, representing ALSAKA STONE ARTS, sold a Philippine produced 4-foot wood totem pole for

$3,000.00. C.R. RODRIGO identified T.L.M., an Alaska Native Tlingit, as the carver of the wood totem pole. On June 9, 2021, T.L.M. represented that the wood totem pole previously identified himself as the carver of the wood totem pole and posed in a picture with the totem pole and signed the back of the pole representing himself as the carver.

On or about April 28, 2021, C.M. RODRIGO, in Kent, Washington, representing ALASKA STONE ARTS, sold a Philippine produced moose carving signed "Kilit" for $3,000.00 and represented himself as the artist and as an Alaska Native Tlingit; C.M. RODRIGO also sold a Philippine produced whale tail stone carving signed "Simeon" identifying S.P.C., an Alaska Native as the artist for $1,200.00, and a Philippine produced 4-foot wood totem pole identifying T.L.M., an Alaska Native as the artist for $2,000.00.

On or about July 2, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian, sold a Philippine produced bear stone carving signed by "Andrew" for $1,600.00 and C.T.L. misrepresented the artist "Andrew" as an Alaska Native artist.

On or about July 9, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian, sold a Philippine produced 19-inch wood totem pole for $300.00 after representing T.L.M., an Alaska Native, as the artist who carved the wood totem pole.

On or about July 12, 2021, at ALASKA STONE ARTS, C.M. and G.T. RODRIGO sold a Philippine produced bear with salmon stone carving signed by "Kilit" for $1,000.00 and gifted a small standing eagle stone carving signed by "jr". C.M. RODRIGO represented the carvers of the two stone carvings as Alaska Natives.

On or about July 15, 2021, at ALASKA STONE ARTS, C.M. and G.T. RODRIGO sold a Philippine produced salmon stone carving signed by "Kilit" for

$1,600.00 and gifted a humpback whale stone carving signed by "Sonny" and represented the carvers of the two stone carvings as Alaska Natives.

On or about August 8, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian and T.L.M., an Alaska Native, sold a Philippine produced two sea turtles stone carving for $1,870.00 and gifted a small sea turtle stone carving that C.T.L. and T.L.M represented were carved by an Alaska Native.

On or about August 8, 2021, at ALASKA STONE ARTS, C.T.L., an American Indian and T.L.M., an Alaska Native, sold to an undercover agent law enforcement agent, a Philippine produced 22-inch wood totem pole for $1,500.00 that T.L.M signed in black marker with his name and the month/year that he made the wood totem pole as an Alaska Native artist. During that same contact, C.T.L. offered to sell to the undercover agent, a Philippine produced black bear and a dancing bear stone carvings signed by "jr" for $1,500.00 representing that "jr" was an Alaska Native artist. C.T.L. and T.L.M. represented each other as Alaska Native cousins and master carver "Kilit" as their uncle.

On or about August 26, 2021, at ALASKA STONE ARTS, S.P.C., an Alaska Native and C.T.L., an American Indian, sold a Philippine produced a whale tail, a kayak hunter, and a humpback whale stone carvings signed by "Kilit" for $4,435.00 with S.P.C. and C.T.L. representing themselves as Alaska Natives and the artist "Kilit" as their uncle, an Alaska Native carver, who produced the carvings locally in Ketchikan.

On or about August 27, 2021, at ALASKA STONE ARTS, S.P.C., an Alaska Native and C.T.L., an American Indian, sold a Philippine produced sbear with an eagle

on its back stone carving signed by “Kilit” for $1,371.19 and S.P.C. represented that the artist “Kilit” as an Alaska Native family member.

On or about August 29, 2021, at ALASKA STONE ARTS, S.P.C and T.L.M., are Alaska Natives, who sold a Philippine produced humpback whale stone carving signed “Simeon” with S.P.C. represented as an Alaska Native artist, for $3,000.00. S.P.C. and T.L.M. gifted a Philippine produced unsigned bear, two small bear stone carvings signed “ЯR”, and a standing eagle carving signed “Cameron.” S.P.C. and T.L.M. represented that all the stone carvers were local Alaska Natives artists that were related to them. T.L.M. sold a Philippine produced bear with a fish in its mouth stone carving signed by “Kilit” for $3,200.00 and represented the carver as an Alaska Native artist.

On or about September17, 2021, at ALASKA STONE ARTS, T.L.M., an Alaska Native, sold to an undercover agent a Philippine produced 22-inch wood totem pole for $1,200.00 and gifted a 12-inch and a 11-inch wood totem poles and signed the 22-inch wood totem pole with his name in black marker with the month/year it was made by T.L.M. as the carver and that all the carvers in the business were T.L.M. Tlingit relatives who made the wood totem poles. T.L.M sold a Philippine produced 3-inch bear stone carving for $50.00 signed “jr” representing the carver as an Alaska Native.the wood totem pole.

//

//

//

//

### D. Statutory Penalties and Other Matters Affecting Sentence

#### 1. Statutory Penalties

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea(s), are as follows:

Count 1: 18 U.S.C. § 371 (Conspiracy)

1) 5 years' imprisonment;

2) a $250,000 fine;

3) a $100 special assessment; and

4) three years of supervised release.

Count 2: 18 U.S.C. § 1159 (Misrepresentation of Indian Produced Goods and Products)

1) 5 years' imprisonment;

2) a fine of $250,000 or twice the pecuniary gain to the defendant or pecuniary loss to the victim;

3) a $100 special assessment; and

4) three years of supervised release.

#### 2. Other Matters Affecting Sentence

##### a. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of United States Sentencing Guidelines (U.S.S.G). § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any

imprisonment and supervised release term; 2) pursuant to 18 U.S.C. § 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

**b. Payment of Special Assessment**

The defendant agrees to pay the entire special assessment in this case on the day the Court imposes the sentence. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

**c. Consequences of Felony Conviction**

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of

the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

### E. Restitution

The defendant agrees that the Court will order restitution to the following victim(s), to be determined at sentencing.

### F. Voluntary Abandonment

"Personal property to be voluntarily abandoned under this agreement include the following items: The defendant has agreed to the voluntary abandonment of all stone carvings and wood totem poles that were seized pursuant to the execution of multiple search warrants in Alaska and Washington on December 8, 2021. The defendant warrants that the defendant had sole possession and ownership of the property referenced above, and that there are no claims to, or liens or encumbrances on the property referenced above. Defendant will take all steps as requested by the United States to pass clear title to the property, including but not limited to, executing documents, and testifying truthfully in any legal proceeding. The defendant agrees to forever abandon and disclaim any right, title, and interest the defendant may have in the property described above, and warrant to the Court free, clear and unencumbered title to the aforelisted property.

//

//

//

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Guidelines (U.S.S.G). as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

### B. Guideline Application Agreements

The parties have no agreements on any guideline applications unless set forth below in this section.

#### 1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two-level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

### C. Sentencing Recommendations

The United States Probation Office (U.S.P.O) will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The parties stipulate and agree to the amount of loss of $1,008,935.28 to be used for the purpose of determining the underlying guideline calculation pursuant to U.S.S.G. § 2B1.1 (b)(1)(H) calling for a +14 level increase from the base level of 6, for a total offense level of 20. The parties stipulate and agree that the government will not seek a period of active incarceration, however, will recommend as condition of probation a 3 months cap on home detention and 200 hours of community work service. The parties stipulate and agree that the defendant will not pay a fine. The parties stipulate and agree the defendant pay the Indian Arts and Crafts Board a donation in the amount of $10,000. The parties further stipulate and agree to joint and several restitutions to be paid to customers identified in the total amount of $54,204.81. The parties further stipulate to a period of probation of five years. The parties further stipulate and agree that the defendant to write and sign a letter of apology, approved by the United States Attorney's Office, to be published in the Ketchikan newspaper for two weeks at the defendant's expense. The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in

Section II.C, any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

## IV. ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea(s) and the Court's acceptance of the defendant's plea(s) and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Information in this case and the defendant's admissions set forth in Section II.C.

Provided, however, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements. The defendant hereby agrees that he/she waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## V. WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A. Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;
- The right to object to the composition of the grand or trial jury;
- The right to plead not guilty or to persist in that plea if it has already been made;
- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;
- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;
- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;
- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and
- The right to contest the validity of any searches conducted on the defendant's property or person.

### B. Appellate Rights

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II.D above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's conviction(s) and guilty plea[s], including arguments that the statute(s) to which defendant is pleading guilty (is/are) unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea[s] of guilty.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

### C. Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction(s) and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any

challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea(s).

**D. Claim for Attorney Fees and Costs**

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

**E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)**

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II.C. The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Fed. R. Crim. P. 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

**F. Potential Plea before Magistrate Judge**

The defendant has the right to enter a plea before a United States District Court Judge. The defendant, defense counsel, and the attorney for the Government consent to have the defendant's plea(s) taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea(s) of guilty be accepted, a pre-sentence investigation report will be ordered

pursuant to Fed. R. Crim. P. 32. The parties agree to file objections to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case. The defendant agrees that if the defendant is pleading guilty to an offense described in 18 U.S.C. §. 3142(f)(1)(A), (B), or (C) (involving a crime of violence, a crime punishable by a maximum sentence of life or death, or a Title 21 controlled substance offense for which the maximum sentence is ten years or more), that the defendant will remand into custody on the day that he/she agrees in court to the factual basis supporting the plea. The defendant further agrees not to seek release at any time between the date of the guilty plea before the Magistrate Judge and the date of imposition of sentence before the District Court Judge.

## VI. THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, CHRISTIAN RYAN TIGLAO RODRIGO, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea(s). There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea(s).

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense(s) to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea(s). I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be

revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea(s). My attorney and I have discussed all possible defenses to the charge(s) to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statute(s) applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of 1 - Conspiracy, in violation of 18 U.S.C. § 371; and 2 - Misrepresentation of Indian Produced Goods and Products, in violation of 18 U.S.C. § 1159 of the Information.

DATED: ____________________________

CHRISTIAN RYAN TIGLAO RODRIGO
Defendant

//

//

//

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge(s) to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: June 26, 2024

PETER OFFENBECHER
Attorney for Christian Ryan Tiglao Rodrigo

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

S. LANE TUCKER
United States Attorney

DATED: June 26, 2024

JACK S. SCHMIDT
Assistant United States Attorney